18-2669-cv(L)
*Narayanan v. Sutherland Global Holdings, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of September, two thousand nineteen.

PRESENT:
> PIERRE N. LEVAL,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MUTHU NARAYANAN,

> *Plaintiff-Counter-Defendant-*
> *Appellant-Cross-Appellee,*

v.                                                      18-2669-cv; 18-2678-cv;
                                                            19-1648-cv

SUTHERLAND GLOBAL HOLDINGS INC.,

> *Defendant-Counter-Claimant-*
> *Appellee-Cross-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-COUNTER-
DEFENDANT-APPELLANT-
CROSS-APPELLEE:

JOHN R. CUTI (Daniel Mullkoff, *on the brief*),
Cuti Hecker Wang LLP, New York, New York.

FOR DEFENDANT-COUNTER-
CLAIMANT-APPELLEE-
CROSS-APPELLANT:

JOSEPH B. SCHMIT (Sean C. McPhee *and*
Richard Weingarten, *on the brief*), Phillips
Lytle LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Western District of New York (Telesca, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings.

Plaintiff-Counter-Defendant-Appellant-Cross-Appellee Muthu Narayanan ("Narayanan") and Defendant-Counter-Claimant-Appellee-Cross-Appellant Sutherland Global Holdings, Inc. ("Sutherland") appeal from a judgment entered May 17, 2018, granting in part and denying in part Narayanan's and Sutherland's cross-motions for summary judgment. The district court's reasoning was set forth in a decision and order entered May 16, 2018, and in a subsequent opinion entered August 8, 2018. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to vacate the district court's judgment.[1]

---

[1] Sutherland also appeals from the district court's order entered May 7, 2019, denying its motion pursuant to Fed. R. Civ. P. 60(b) and 62.1(a) to vacate the district court's dismissal of its

2

In his March 25, 2015 complaint, Narayanan alleged that Sutherland breached two contracts by refusing to pay him the money he was owed for selling Sutherland shares. On June 15, 2015, Sutherland filed its answer and counterclaim, alleging that Narayanan breached his fiduciary duty owed to the company. After discovery, Narayanan moved for summary judgment and Sutherland moved for partial summary judgment.

In its summary judgment decision, the district court granted in part and denied in part the parties' respective motions. *Narayanan v. Sutherland Glob. Holdings, Inc.*, No. 15-CV-6165 T, 2018 WL 2234884 (W.D.N.Y. May 16, 2018). On appeal, Narayanan appeals the dismissal of his breach of contract claim related to one of the stock buyback agreements, and Sutherland cross-appeals the dismissal of its breach of fiduciary duty counterclaim.

## BACKGROUND

The evidence supporting each cross-motion for summary judgment is viewed in the light most favorable to the nonmoving party. Sutherland is a Delaware corporation with its headquarters in Rochester, New York. Narayanan, a citizen and resident of India, is a former director of Sutherland who helped establish Sutherland

---

counterclaim based on newly discovered evidence. In light of our decision to vacate the district court's judgment and remand for further proceedings, this appeal is rendered moot.

Global Services Pvt. Ltd. ("SGS-India") and was hired as the Vice President of Finance for SGS-India in or around March 2000.

On or about October 21, 2004, Sutherland granted Narayanan an option to purchase 300,000 shares of its stock, pursuant to the Senior Management Performance Equity Incentive Plan Stock Option Agreement (the "Stock Option Agreement").

**A.** *The TPG Transaction and Stock Buyback Program*

In fall of 2014, Sutherland entered an agreement to sell approximately one-third of its stock to the private equity firm TPG Capital (the "TPG Transaction"). On or about October 7, 2014, Sutherland offered option holders the opportunity to exercise their options through the Sutherland Global Holding Option Exercise and Stock Buyback Program (the "Buyback Program"). As part of the Buyback Program, Sutherland offered to purchase 30% of the shares resulting from the net exercise of the employees' stock options (the "30% Buyback Agreement"). On October 9, 2014, Narayanan submitted a signed copy of the 30% Buyback Agreement to Freed Maxick CPAs, P.C. ("Freed Maxick") -- an accounting firm hired by Sutherland to administer the Buyback Program. Sutherland does not contest the district court's conclusion that it agreed to the 30% Buyback Agreement and that this agreement is valid and enforceable.

In October 2014, Narayanan contacted Mike Russo ("Russo"), a director at Freed Maxick and interim-CFO at Sutherland, about selling back 100% of his Sutherland shares, instead of only 30% of his shares as originally agreed. Narayanan asked Russo

4

to ask Dilip Vellodi ("Vellodi"), Sutherland's founder, CEO and controlling shareholder, about purchasing 100% of Narayanan's shares.

On October 21, 2014, Mark Forte, a staff accountant and supervisor at Freed Maxick, sent an email to Narayanan containing documents related to the repurchase of 100% of Narayanan's shares (the "100% Buyback Agreement"). Narayanan signed the 100% Buyback Agreement and emailed it to Freed Maxick on October 22, 2014. The TPG Transaction closed on October 23, 2014. Sutherland, however, never paid Narayanan the amount due to him under either the 30% Buyback Agreement or the 100% Buyback Agreement.

B. *The India Land Acquisition*

Separately, but relevant to Sutherland's counterclaim for breach of fiduciary duty, Sutherland began a project in or about 2009 to acquire 26 acres of land in Perumbakkam, India (the "India Land Acquisition"). A Sutherland officer engaged S. Ventkataramanan ("Ramanan") to serve as the land aggregator for the India Land Acquisition. Ramanan and Kamalesh Kumar Sheft ("Kamalesh") were also co-owners of a land-aggregation business called RJK Investments, Inc. ("RJK").

The board of Sutherland Development Company Private Limited ("SDC"), a Sutherland subsidiary, authorized Narayanan to oversee the India Land Acquisition. Between May 2010 and July 2013, Narayanan made 36 separate advances to Ramanan totaling 304 million rupees (approximately $4,230,000 at today's exchange rate) for 20

5

land sales that had not been completed or registered. In connection with these advances, Narayanan collected promissory notes and undated signed checks from Ramanan in the amount advanced. In July or August 2013, Ramanan was arrested and imprisoned due to criminal activity in a separate land aggregation project. Sutherland contends that it received nothing of value in return for the millions of rupees advanced to Ramanan. Ramanan later provided SDC with eight mortgage deeds for land in a different area, the value of which arguably exceeded the amount of money SDC had advanced to Ramanan for land sales that had not been previously completed or registered.

C.    *Narayanan's Business Dealings*

The record also reflects that Narayanan and members of his family had prior business dealings with RJK and Ramanan. Specifically, Narayanan's father and sister loaned approximately 8 million rupees to RJK, the company co-owned by Ramanan and Kamalesh. In the spring of 2010, these loans remained outstanding. Kamalesh asked Narayanan to repay RJK's outstanding loan to Narayanan's father and sister. Narayanan agreed to do so. RJK made several payments to Narayanan between October 2010 and January 2011. RJK still owes Narayanan approximately 7.6 million rupees. Furthermore, in or around 2009, Narayanan personally made a loan to RJK and transferred 300,000 rupees to an account in Ramanan's name at Kamalesh's direction. RJK still owes Narayanan for this loan.

6

We review a district court's decision on cross-motions for summary judgment *de novo*, construing the evidence with respect to each motion in the light most favorable to the non-moving party. *Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001); *see also Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000). "Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011) (citation omitted).

## *DISCUSSION*

We address first the dismissal of Narayanan's breach of contract claim and second the dismissal of Sutherland's breach of fiduciary duty counterclaim.

### A. *Breach of the 100% Buyback Agreement Claim*

The district court erred in granting summary judgment here because there exist numerous disputed factual issues relating to the formation and validity of the 100% Buyback Agreement.

On the issue of contract formation, the record reveals factual disputes over whether Sutherland agreed to buy back 100% of Narayanan's shares, as well as whether it ratified such a contract. *See In re Adelphia Recovery Tr.*, 634 F.3d 678, 692 (2d Cir. 2011) ("[R]atification may be express or implied, or may result from silence or inaction." (citing 57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 88)); *Winston v. Mediafare*

*Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) ("Under New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document.").

For example, Russo, Sutherland's interim-CFO, allegedly told Narayanan that he would submit Narayanan's request for a 100% buyback to Vellodi, and later allegedly reported back to Narayanan, "You got it; you got the hundred percent." Russo then instructed Freed Maxick to prepare the documents and to record the company's repurchase of 100% of Narayanan's shares on the company books. Given this evidence, there is a genuine dispute over whether Sutherland in fact agreed to the purchase of 100% of Narayanan's option stock.

Moreover, other evidence in the record suggests that Sutherland believed and agreed that the 100% Buyback Agreement was valid. Vellodi at least arguably acknowledged that the 100% Buyback Agreement was valid, but that payment was being withheld only because of Narayanan's alleged breach of his fiduciary duty. *See* J. App'x at 1679 (Vellodi testifying that, "under normal circumstances giving Muthu [Narayanan] his options would have been a no-brainer," but that he was not given them due to Vellodi's belief that Narayanan had breached his fiduciary duties). A spreadsheet sent by a Sutherland employee also recorded that Narayanan "exercised his Option on October 9, 2014 and sold 100% of the resulting shares (valued at $1,912,165) back to Sutherland." J. App'x at 1672. This evidence, together with other evidence in

8

the record relating to the actual and/or apparent authority of Russo and Freed Maxick to bind Sutherland in these respects, created genuine issues of material fact for trial.

Sutherland relies heavily on Provision 18 of its "2004 Performance Equity Incentive Plan" in arguing that board approval was required as a matter of law. Sutherland persuaded the district court that this provision required board approval (which was not obtained) for the repurchase of Narayanan's option stock. The district court granted summary judgment in favor of Sutherland, rejecting Narayanan's contract claim, based on that interpretation of Provision 18. We believe this was error.

Provision 18 was ambiguous and arguably meant something quite different. Its requirement of board approval arguably applied not to a company decision to repurchase option stock but to the issuance of options for stock subject to a future right of repurchase. If so, the provision's requirement of board approval had no application to the contract claimed by Narayanan because, at the time of the issuance of the options, no such contract right existed. Furthermore, even if the provision meant what the district court ruled, factual questions still exist as to apparent authority and ratification.

Accordingly, we hold that the district court erred in granting summary judgment dismissing the breach of contract claim.

9

**B.**     *Breach of Fiduciary Duty Counterclaim*

The district court also erred in granting summary judgment to Narayanan on Sutherland's breach of fiduciary duty counterclaim as the record reveals several triable issues of fact.

For example, the record shows that between May 2010 and July 2013, Narayanan issued 36 separate advances to Ramanan totaling 304 million rupees for 20 land sales that were not completed or registered. The record includes evidence with respect to nine plots of land where Narayanan issued "two or more advances to Ramanan on different dates without ever getting the land registered." J. App'x at 1638. The record includes evidence that Narayanan sent multiple cash advances to Ramanan for the same plots of land. While Narayanan offers explanations for these actions, these factual disputes may only be resolved at trial. Moreover, Narayanan testified that he "ha[s] no idea" what happened to the advances he gave to Ramanan. J. App'x at 1639. Narayanan further testified that he did not look into what Ramanan did with the advances he had given him and "ha[s] no idea" whether there existed any land contracts between Ramanan and landowners. J. App'x at 1639.

Furthermore, the record shows that Narayanan had several business dealings with RJK and Ramanan. In or around 2008, Narayanan's father and sister loaned approximately 8 million rupees to RJK. Further, Narayanan personally made a loan to RJK and transferred 300,000 rupees to an account in Ramanan's name at

Kamalesh's direction. These loans remain outstanding and there is a disputed issue of fact as to whether Narayanan disclosed to Vellodi or any other Sutherland employee the existence of all of the outstanding loans with RJK. Given the evidence of Narayanan's involvement with RJK and Ramanan's interest in RJK, a reasonable jury could find that Narayanan paid Ramanan millions of rupees in the manner he did out of self-interest, to keep RJK running as a viable business and to stay in Ramanan's good graces. This evidence, together with the evidence of the funds transferred to Ramanan, created a factual issue regarding Narayanan's potential self-dealing and is relevant to the breach of fiduciary duty counterclaim.

\* \* \*

Accordingly, we **VACATE** the judgment of the district court and **REMAND** the case for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11