20-1281
*Mayer v. Ringler Associates Inc. and Af.*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2020
No. 20-1281

**GREGORY MAYER,**
*Plaintiff-Appellant,*

v.

**RINGLER ASSOCIATES INC. AND AFFILIATES LONG TERM DISABILITY
PLAN, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,**
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: FEBRUARY 3, 2021
DECIDED: AUGUST 12, 2021

Before:     WALKER, SACK, and MENASHI, *Circuit Judges.*

Plaintiff-Appellant Gregory Mayer appeals from a judgment of the district court (Briccetti, J.) sustaining the final determination of Defendant-Appellee Hartford Life and Accident Insurance Company ("Hartford Life") with respect to Mayer's disability benefits under the terms of Defendant-Appellee Ringler Associates Inc. and Affiliates

Long Term Disability Plan (the "Plan"). Mayer argues that the district court erred by reviewing Hartford Life's final determination under the arbitrary-and-capricious standard of review. He further argues that even under that standard of review, Hartford Life's determination was incorrect.

The Plan invests broad discretionary authority in Hartford Life as the claims administrator. Mayer argues that (1) California Insurance Code § 10110.6(a) voids this grant of discretionary authority, and (2) his claim did not receive the "full and fair review" that the claims-procedure regulations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, require because Hartford Life failed to produce certain documents developed and considered during the appeal from the initial determination while Mayer's claim was still under review. For that reason, Mayer argues, Hartford Life's determination must be reviewed *de novo*.

We disagree and hold that California Insurance Code § 10110.6(a) applies only to the claims of California residents. It does not apply to Mayer because he was a New York resident at all relevant times. We further hold that "full and fair review" under ERISA's claims-procedure regulations does not require the claims administrator to produce documents developed or considered during the appeal from the initial determination while the claim is still under review and before a final benefits determination. Mayer therefore cannot establish that Hartford Life did not provide his claim a "full and fair review." The district court correctly reviewed Hartford Life's determination under the arbitrary-and-capricious standard and correctly concluded that the final determination was reasonable and

supported by substantial evidence in the record. We **AFFIRM** the judgment of the district court.

––––––––––

MICHAEL CONFUSIONE, Hegge & Confusione, LLC, Mullica Hill, NJ, *for Plaintiff-Appellant*.

PATRICK W. BEGOS, Gregory J. Bennici, *on the brief*, Robinson & Cole LLP, Stamford, CT, *for Defendants-Appellees*.

––––––––––

MENASHI, *Circuit Judge*:

Plaintiff-Appellant Gregory Mayer appeals from a judgment of the district court (Briccetti, J.) sustaining the final determination of Defendant-Appellee Hartford Life and Accident Insurance Company ("Hartford Life") with respect to Mayer's disability benefits under the terms of Defendant-Appellee Ringler Associates Inc. and Affiliates Long Term Disability Plan (the "Plan"). The primary issue on appeal is whether Hartford Life's determination should receive deference. Resolving this issue depends on the answers to two questions: (1) whether the Plan grants discretion to Hartford Life as the claims administrator, and (2) whether Hartford Life complied with the claims-procedure regulations promulgated under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and set forth in 29 C.F.R. § 2560.503-1.

Mayer urges us to answer both questions in the negative. First, although it is undisputed that the Plan expressly grants broad discretionary authority to Hartford Life, Mayer argues that California Insurance Code § 10110.6(a) voids the grant of discretion. We disagree

3

and hold that § 10110.6(a) applies only to the claims of California residents. It does not affect the grant of discretion to Hartford Life here because Mayer is not a California resident.

Second, Mayer argues that Hartford Life did not satisfy its obligation to provide him "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits," 29 C.F.R. § 2560.503-1(h)(2)(iii), because Hartford Life did not produce certain email communications that were considered during the administrative appeal until after Hartford Life made its final determination. We disagree again and hold that the regulations in effect at the time of Mayer's claim did not require claims administrators to produce documents developed or considered during the administrative appeal before a final determination had been rendered.

For these reasons, we affirm the judgment of the district court.

**BACKGROUND**

**I**

Mayer was the owner, operator, and sole employee of Ringler Associates Scarsdale, Inc. ("RAI-Scarsdale"), an affiliate of Ringler Associates Inc. ("RAI"). From 2001 to 2015, Mayer sold annuities to fund structured personal injury settlements. In September 2015, Mayer underwent multiple surgeries to his knees and spine. From October to December 2015, he attempted intermittent work. On December 16, 2015, unable to continue working, Mayer applied for long-term disability benefits under the Plan.

The Plan is a group policy issued by Hartford Life and "administered by the Plan Administrator with benefits provided in

4

accordance with the provisions of the applicable group plan." App'x 69. The Plan defines "Employer," "Policyholder," and "Plan Administrator" as "Ringler Associates Incorporated and Affiliates," located at 27422 Aliso Creek Road, Aliso Viejo, California. App'x at 45, 58, 68. The Plan designates Hartford Life as the claims administrator and grants Hartford Life "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." App'x at 31, 68, 105.

The Plan incorporates several booklets that describe the terms of coverage for different classes of employees. Because Mayer is a "producer" under the terms of the Plan, only Booklet 4.5[1] and Booklet 1.32[2] relate to Mayer's claim. App'x 45, 82. Both booklets have identical definitions regarding disability and identical provisions for calculating benefits. The booklets calculate benefits based on the insured's pre-disability earnings—defined as the insured's average monthly rate of pay, including bonuses and commissions, paid by the Employer for the two calendar years before the insured became disabled. The two booklets differ only with respect to tax consequences, which depend on whether the insured pays his own premiums.

## II

After Mayer applied for long-term disability benefits, RAI's operations manager sent Mayer's claim forms to Hartford Life. The

---

[1] Booklet 4.5 applies to "All Active Full-time Employees who are producers … not paying their premium who receive a W2." App'x 45.

[2] Booklet 1.32 applies to "All Active Full-time Producers … who are choosing to pay their premium who receive a W2." App'x 82.

forms included an employer statement that the operations manager completed and signed, Mayer's job description, and Mayer's most recent W-2, which reported wages of $100,000.16 for 2014.

On December 21, 2015, Mayer faxed additional claim information directly to Hartford Life. He included a Form 1099-MISC, which showed additional wages of $125,000 paid by RAI-Scarsdale in 2014 and several Simplified Employee Pension ("SEP-IRA") contributions made by RAI-Scarsdale in 2014 and 2015. Mayer told Hartford Life that RAI-Scarsdale rather than RAI was his Employer under Plan, and accordingly RAI could not provide all of his financial information. He argued that the additional income should be considered in calculating his pre-disability earnings. According to Mayer, therefore, his "total payment from Ringler Associates Inc. in 2013 was $200,000.00 and for 2014[, $]277,000." App'x 1529.

Hartford Life sought clarification from RAI about the disparity between Mayer's earnings as reported by RAI and those reported by Mayer himself, noting that "Mr. Mayer indicated that he received additional bonuses that aren't indicated on the information you sent. He indicated another $100,000 in bonuses and $50,000 in SEP plan contributions." App'x 1507. RAI replied that its records "do not show any contributions to a SEP account or pension contributions. If [Mayer] has made any of these contributions it was not through his Ringler business." App'x 1506-07. When Hartford Life provided RAI with the Form 1099-MISC for 2014 that Mayer had submitted, RAI confirmed that it did not issue that document. RAI's operations manager explained that benefits calculations are based on gross salaries and that this additional income should not be considered.

6

On January 28, 2016, Mayer wrote to Hartford Life, insisting again that RAI-Scarsdale was his Employer for purposes of adjudicating his disability claim and that RAI-Scarsdale's records demonstrated that he had received $463,256 in commissions in 2013 and $448,491 in commissions in 2014. RAI's operations manager wrote back to Mayer that "Ringler Associates, Inc. (the home office) is the plan administrator of the Hartford Long Term Disability Policy" and "[t]he premium payments are [RAI's] responsibility and the calculations are based on payroll activity through our ADP payroll system which we keep for all Associates." App'x 1404-05. The operations manager also disputed Mayer's report of 2014 earnings:

> [Y]our application included a copy of a 2014 1099 issued to you for $125,000 from Ringler Associates, Inc. According to our files, the home office did not create a 1099 in that amount. In addition, I have reviewed all the financial records we maintain for your corporation and am unable to substantiate or determine how Ringler Associates Scarsdale was able to provide you an additional $125,000 in 2014 as income.

App'x 1405. Mayer responded that he had earned this additional income from rent and other sources that did not involve RAI and which RAI could not substantiate.

On May 13, 2016, Hartford Life denied Mayer's claim on the ground that he did not meet the Plan's definition of "Disability." App'x 269. Along with the denial letter, Hartford Life sent Mayer a copy of Booklet 1.32. Mayer appealed this determination to Hartford Life's Claim Appeal Unit. App'x 963.

7

On January 4, 2017, Hartford Life reversed its initial determination and approved Mayer's claim. Hartford Life calculated Mayer's monthly pre-disability earnings based on the pay statements provided by RAI rather than RAI-Scarsdale. Mayer's attorney requested copies of documents relevant to the administration of Mayer's claim from Hartford Life. On February 10, 2017, Hartford Life provided Mayer's attorney a copy of its claim file, which included Booklet 4.5 rather than Booklet 1.32.

## III

On July 5, 2017, Mayer's attorney notified Hartford Life's Claim Appeal Unit of Mayer's intent to appeal the claim determination. On July 13, 2017, Mayer's attorney submitted materials in support of Mayer's appeal.

In his appeal submission, Mayer again asserted that RAI-Scarsdale, not RAI, should be considered his Employer for purposes of claim determination. He argued that his benefits should be calculated based on the "corrected" RAI-Scarsdale W-2s that he included in his appeal submission. According to the corrected W-2s, Mayer earned $151,842.01 in 2013 and $399,614.01 in 2014, and he also received SEP contributions of $50,000 in each year, for total earnings in those two years of $651,456.02—a higher total than was reflected in his initial claim submissions. Mayer did not include in the corrected materials the $125,000 "nonemployee compensation" that he had identified as earnings from 2014 in his initial claim submissions.

On November 9, 2017, Hartford Life affirmed its initial claim determination, concluding again that Mayer's disability benefits should be based on the earnings documentation provided by RAI, not RAI-Scarsdale. Hartford Life explained that RAI is the

8

"Employer/Plan Administrator" and as such is "responsible for keeping all documents related to employee's eligibility, enrollment and cost to be paid by the employee with respect to the [long-term disability] coverage under the Policy." App'x 235. Hartford Life observed that the documentation provided by RAI confirmed that Mayer's annual salary in both 2013 and 2014 was $100,000, plus a $50,000 bonus in 2013, and that Mayer's SEP-IRA contributions were not included in the pre-disability earnings calculation because a "SEP-IRA is considered a 408(k) plan" and is not a salary-reduction agreement that would affect the "Monthly Rate of Basic Earnings" under the Plan. App'x 236-37. Hartford Life also noted that RAI-Scarsdale's general ledger report did not show that RAI paid any commissions to Mayer.

Finally, Hartford Life determined that Booklet 4.5 rather than Booklet 1.32 governed Mayer's claim because Booklet 4.5 provides coverage for producers who do not pay their own premiums under the Plan. Accordingly, Hartford Life concluded that Mayer's claim benefit was fully taxable because Mayer did not pay the premiums for his disability benefits coverage.

**IV**

Mayer filed an ERISA claim against Hartford Life and the Plan in federal district court, alleging that Hartford Life incorrectly calculated his long-term disability benefits and determined that his benefits are fully taxable.

After a bench trial on a stipulated record, the district court entered judgment for the defendants. The district court concluded that the Plan grants Hartford Life discretion and that California Insurance Code § 10110.6(a) did not void the grant of discretion; the

9

district court also rejected Mayer's arguments that Hartford Life violated ERISA's claims-procedure regulations. The district court therefore held that Hartford Life's benefits determination should be reviewed under the arbitrary-and-capricious standard.

Applying that standard, the district court concluded that Hartford Life's final determination—including its reliance on earnings documentation provided by RAI—was reasonable and supported by substantial evidence in the record. Accordingly, the district court sustained Hartford Life's determination as consistent with ERISA. Mayer timely appealed.

## DISCUSSION

Mayer argues that the district court erred by reviewing Hartford Life's final determination under the arbitrary-and-capricious standard and by holding Hartford Life's determination to be consistent with ERISA even under that standard of review. "On appeal from a judgment after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law de novo." *Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 88 (2d Cir. 2018). We hold that the district court did not err in applying the arbitrary-and-capricious standard or in sustaining Hartford Life's determination.

## I

While "ERISA does not itself prescribe the standard of review by district courts for challenges to benefit eligibility determinations, … plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard." *Novella v. Westchester Cnty.*, 661 F.3d 128,

10

140 (2d Cir. 2011) (internal quotation marks and alterations omitted); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the absence of a delegation of discretionary authority, the determination of the claims administrator is reviewed *de novo*. *Novella*, 661 F.3d at 140.

Mayer does not dispute that the Plan confers broad discretionary authority on Hartford Life. As the Plan documents note, "[t]he Plan has granted the Insurance Company full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." App'x 31. Yet Mayer argues that because the Plan was delivered in California, and because California law governs the Plan, California Insurance Code § 10110.6(a) voids the Plan's grant of discretion to Hartford Life. For that reason, he maintains that the Plan does not delegate discretion and Hartford Life's determination should be reviewed *de novo*. We disagree. California Insurance Code § 10110.6(a) does not apply to Mayer's insurance policy because Mayer is not a resident of California.

California Insurance Code § 10110.6(a) states in pertinent part:

> If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds … disability insurance coverage *for any California resident* contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

11

Cal. Ins. Code § 10110.6(a) (emphasis added). Section 10110.6(c) in turn defines a provision that reserves "discretionary authority" as "a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court." *Id.* § 10110.6(c).

While § 10110.6(a) seems focused on "California resident[s]," it is possible to read the provision to void all grants of discretion in any group policy, such as the one at issue here, that provides benefits to even one California resident, even if the claimant himself is not a California resident and not otherwise connected to California. Such an interpretation, however, would raise concerns under the Commerce Clause of the U.S. Constitution because it would allow for "the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989); *see* U.S. Const. art. I, § 8, cl. 3 (granting Congress the power "[t]o regulate commerce ... among the several States"). In this case, it is undisputed that Mayer was a resident of New York at all relevant times. He sold annuities, became disabled, and applied for long-term disability benefits in New York. To void the grant of discretionary authority to the claims administrator with respect to a New York resident's disability claim arising from activity in New York would have the impermissible "effect of requiring out-of-state commerce to be conducted at the regulating state's direction." *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 102 (2d Cir. 2003).

That the policy here was issued in California does not appear to solve this problem because § 10110.6(a) expressly provides that its

12

applicability does not depend on "whether or not" the policy was issued "in California." Rather, we must determine the scope of the statute's application to policies that provide benefits "for any California resident." Cal. Ins. Code § 10110.6(a).

To the best of our knowledge, no court has interpreted that statutory language to extend to claimants who are not California residents. Our sister circuits have not addressed this issue, but district courts that have considered it, including those in the Ninth Circuit, have concluded that § 10110.6 applies when the claimant is a resident of California, not when the policy potentially insures some other beneficiary who resides in California. *See, e.g., Campbell v. Hartford Life & Accident Ins. Co.*, No. 17-80193-CIV, 2018 WL 4963118, at *8 n.8 (S.D. Fla. Oct. 15, 2018) ("[B]y its own express terms, [California Insurance Code § 10110.6(a)] applies only to California residents."); *Pfenning v. Liberty Life Assurance Co.*, No. 3:14-CV-471, 2015 WL 9460578, at *8 (S.D. Ohio Dec. 28, 2015) ("Liberty further argues that this discretionary clause is valid because [California Insurance Code § 10110.6] only applies to California residents. The Court agrees."), *vacated and remanded by agreement*, No. 16-3068, 2016 WL 11618609, at *1 (6th Cir. Aug. 2, 2016); *Cox v. Allin Corp. Plan*, No. 16-4675, 2018 WL 9543021, at *6 (N.D. Cal. Sept. 28, 2018) (explaining that § 10110.6 "applies, regardless of *where* the policy was offered, issued, delivered, or renewed" if the plaintiff "was a California resident when he filed his claim … notwithstanding the [policy's] choice of law clause"), *remanded for further development of the record*, 848 F. App'x 343 (9th Cir. 2021); *see also Snyder v. Unum Life Ins. Co. of Am.*, No. CV-13-07522, 2014 WL 7734715, at *10 (C.D. Cal. Oct. 28, 2014) (holding that § 10110.6 applies because "the parties do not dispute that Plaintiff is a California resident" regardless of "where the policy was offered,

issued, delivered, or renewed" and "regardless of the choice of law provision").[3]

In addition to the constitutional concerns it would raise and the tension it would create with prior case law, we note that Mayer's expansive interpretation of § 10110.6 would also "undermine the significant ERISA policy interests of minimizing costs of claim disputes and ensuring prompt claims-resolution procedures" because the standard of review applicable to a given claimant would depend on the residence of any other person insured under the policy, assuming one might be from California. *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 295 (2d Cir. 2004); *see also Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

Because Mayer is not a California resident, we conclude that the Plan's grant of discretionary authority to Hartford Life is not void under California Insurance Code § 10110.6.

## II

Next, Mayer argues that his claim should be reviewed *de novo* because Hartford Life did not provide a "full and fair review" of his benefits claim as required by ERISA's claims-procedure regulations. 29 C.F.R. § 2560.503-1(h)(4). He argues that § 2560.503-1(h)(4)

---

[3] We disagree with Mayer that *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625*, 856 F.3d 686 (9th Cir. 2017), stands for the proposition that § 10110.6 applies to an insurance policy that covers a California resident regardless of the claimant's residence. In *Orzechowski*, the Ninth Circuit applied § 10110.6 to an insurance policy issued to a California resident. *See id.* at 692-95; Complaint at 3, *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan*, No. CV-12-1905, 2014 WL 979191 (C.D. Cal. Mar. 12, 2014), ECF No. 1. The court did not address whether § 10110.6 applies to claimants who are not California residents.

required Hartford Life to provide him with documents considered for the first time during the administrative appeal—in particular, email communications between an underwriter and broker for the Plan—and to provide those documents while the appeal was still under review in advance of the final determination. We disagree.

ERISA provides that every claim for benefits must receive a "full and fair review" by the claims administrator. 29 U.S.C. § 1133(2). When Mayer submitted his claim, the regulation governing claims procedures—29 C.F.R. § 2560.503-1—provided that claims procedures "will not … be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with the requirements of paragraphs (h)(2)(ii) through (iv) and (h)(3)(i) through (v) of this section." 29 C.F.R. § 2560.503-1(h)(4) (effective until Jan. 18, 2017).[4] As relevant to this case, paragraph (h)(2)(iii) directs that the administrator must, "upon request," provide the claimant "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." *Id.* § 2560.503-1(h)(2)(iii). A document is "relevant" to a claim if, *inter alia*, the document "was relied upon in," or "submitted, considered, or generated in the course of," making the final benefits determination. *Id.* § 2560.503-1(m)(8)(i)-(ii). If a claims administrator does not comply with the claims-procedure regulations, the resulting

---

[4] While this paragraph was later amended, *see infra* note 5, the standard provided by this version of the paragraph continued to apply to all claims for disability benefits filed on or before April 1, 2018. *See* 29 C.F.R. § 2560.503-1(p)(4)(ii) (2020); Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 92,316. (Dec. 19, 2016).

benefits determination will usually be reviewed *de novo* in federal court. *Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016).

We have not addressed whether providing a "full and fair review" pursuant to the version of § 2560.503-1(h)(4) applicable to Mayer's claim requires the claims administrator to provide the claimant with documents developed or considered during the administrative appeal in advance of the final determination. However, those circuits that have considered this question have uniformly concluded that it does not. *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 436-37 (D.C. Cir. 2011); *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 895-96 (8th Cir. 2009); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1245-46, (11th Cir. 2008); *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166-67 (10th Cir. 2007); *see also Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310-11 (5th Cir. 2015); *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010); *Morningred v. Delta Family-Care & Survivorship Plan*, 526 F. App'x 217, 221 n.9 (3d Cir. 2013).

In *Glazer*, the Eleventh Circuit concluded that under the claims-procedure regulations, the claims administrator is "not required to produce the documents it relied upon while it reviewed the initial denial of benefits; the production occurs after a final decision is reached." 524 F.3d at 1245. The court reasoned that a claims administrator has not "relied upon" or "used [a document] 'in the course of making the benefit determination' until the determination ha[s] been made." *Id.* (quoting 29 C.F.R. § 2560.503-1(m)(8)(i)-(ii)). The court noted that § 2560.503-1(i)(5) requires all relevant documents generated during the appellate review and initial claim determination to be produced to the claimant after the final determination—a requirement that "would be superfluous if the claimant had a right to

16

the documents during the pendency of the review." *Glazer*, 524 F.3d at 1245.

The Tenth and Eleventh Circuits have also "agreed with the Department of Labor that the purpose of the production of these documents is to enable a claimant to evaluate whether to appeal an adverse determination." *Id.* at 1246 (citing *Metzger*, 476 F.3d at 1167). Giving claimants "pre-decision access to relevant documents generated during the administrative appeal … would nullify the Department's explanation" that § 2560.503-1(m)(8) "serve[s] the interests of both claimants and plans by providing clarity as to plans' disclosure obligations, *while providing claimants with adequate access to the information necessary to determine whether to pursue further appeal.*" *Metzger*, 476 F.3d at 1167 (quoting ERISA Claims Procedure, 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000)) (emphasis in original). Providing access to documents while the claim is still under review "would not aid claimants in determining 'whether to pursue further appeal,' because claimants would not yet know if they faced an adverse decision." *Id.*

These courts have further explained that "'subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to … reports of appeal-level reviewers prior to a final decision on appeal'" because "requiring these documents to be produced earlier would create 'an unnecessary cycle of submission, review, re-submission, and re-review.'" *Glazer*, 524 F.3d at 1245-46 (quoting *Metzger*, 476 F.3d at 1166, 1167). "Such a cycle 'would undoubtedly prolong the appeal process, which, under the regulations, should normally be completed within 45 days.'" *Midgett*, 561 F.3d at 895 (quoting *Metzger*, 476 F.3d at 1166); *see also Pettaway*, 644 F.3d at 436 ("[E]ven though new medical reports were generated during TIAA's

administrative review, the regulations provide for the 'opportunity to appeal an adverse benefit determination' and not for the opportunity to engage in a continuous cycle of appeals from appeals.") (internal citation omitted) (quoting 29 C.F.R. § 2560.503-1(h)(1)).

We join these circuits and hold that the version of § 2560.503-1(h)(4) in effect at the time of Mayer's claim does not require the claims administrator to produce documents developed or considered during the administrative appeal before rendering its final determination. Therefore, providing Mayer's claim a "full and fair review" did not require Hartford Life to produce documents developed or considered while Mayer's claim was under review prior to a final determination. [5] Accordingly, Mayer has failed to

---

[5] The 2018 amendment to § 2560.503-1(h)(4) does not change our conclusion. The amended subsection provides that a "full and fair review" requires the claims administrator, "before the plan can issue an adverse benefit determination on review on a disability benefit claim," to "provide the claimant … with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination." 29 C.F.R. § 2560.503-1(h)(4)(i) (2020). However, the amended language does not dictate the proper interpretation of the regulatory text applicable to Mayer's claim. If the prior regulation had already required all plans to disclose documents developed or relied on before a final determination on appeal, then it would not have been necessary to amend § 2560.503-1(h)(4) to expressly include an obligation for plans providing disability benefits to disclose documents developed or relied on during the appeal before a final determination. Indeed, when amending the regulation, the Department of Labor explained that it was providing "additional protections," including "the right of claimants to respond to new and additional evidence," in order to make "improvements to the claims process for disability claims." Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 92,316-17 (Dec. 19, 2016). The Department explained that it had determined "updates and modifications" and "enhancements in procedural safeguards" were needed

18

demonstrate that the district court erred in reviewing Hartford Life's final benefits determination under the arbitrary-and-capricious standard.[6]

---

for the claims process for disability benefits in order to incorporate "protections similar to those required for group health plans under the Affordable Care Act." *Id.* at 92,317. That the Department adopted these changes indicates that the prior version of § 2560.503-1(h)(4)—which is applicable to Mayer's claim—did not already include those procedural requirements.

[6] Mayer alleges other violations of ERISA's claims-procedure regulations. He first argues that Hartford Life violated 29 C.F.R. § 2560.503-1(i)(1), (3) by failing to "notify" him of his "benefit determination on review" within "45 days" of Hartford Life's "receipt of the [his] request for review." Hartford Life, however, provided timely notice with an updated expected benefit determination date and an explanation that it would need more than 45 days to process Mayer's claim because it was "still awaiting information from the Employer needed to fully investigate [Mayer's] claim." App'x 239; *see* 29 C.F.R. § 2560.503-1(i)(1), (3) (allowing the plan administrator to extend the deadline by 45 days if it "determines that an extension of time for processing is required" and provides "written notice ... indicat[ing] the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review"). Mayer acknowledges in his brief that this notice was timely. Appellant's Br. 24. Mayer also lists a series of allegedly "missed deadlines" during the initial benefits determination, which he did not present to the district court and which the district court did not consider. Appellant's Br. 22-23. We decline to consider this argument now. *See Sczepanski v. Saul*, 946 F.3d 152, 161 (2d Cir. 2020) (declining to consider arguments that "were available to the parties below" and the parties "proffer no reason for their failure to raise the arguments below"). Finally, Mayer argues that Hartford Life violated 29 C.F.R. § 2560.503-1 (h)(2)(iv) by "ignoring" documents that showed that Mayer was employed by RAI-Scarsdale rather than RAI for the purpose of plan administration. The record does not support the claim that Hartford Life ignored relevant documentation by concluding that RAI was Mayer's Employer under the Plan.

## III

We now turn to Hartford Life's final benefits determination. As noted, after a bench trial in an ERISA case, we review the district court's conclusions of law *de novo* and its findings of fact for clear error. *Hartford Roman*, 905 F.3d at 88. "We review *de novo* the district court's application of [its factual] findings to draw the legal conclusion that the defendant's decision to deny benefits was not arbitrary or capricious." *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir. 1996).

A district court reviewing a final benefits determination under the arbitrary-and-capricious standard may disturb that determination only if the determination "was without reason, unsupported by substantial evidence, or erroneous as a matter of law." *Novella*, 661 F.3d at 140 (alteration omitted). The district court may not deem a final benefits determination to be arbitrary and capricious merely because the record contains evidence supporting an alternative determination. *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 94 (2d Cir. 2000), *abrogation on other grounds recognized by McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126 (2d Cir. 2008). The determination need only be supported by substantial evidence—meaning "more than a scintilla but less than a preponderance" of "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator." *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003) (alteration omitted).

The district court did not err in applying this standard to conclude that Hartford Life's determination was reasonable and supported by substantial evidence. There is no clear error in the findings on which the district court relied to reach this conclusion.

The Plan expressly defines RAI as the "Employer" and "Policyholder" for purposes of Plan administration. The record also indicates that RAI managed Plan enrollment, administrated the Plan, kept all documents related to employees' eligibility, and paid Plan premiums based on records of employee earnings that were in RAI's possession. From this evidence, it was reasonable for Hartford Life to calculate Mayer's disability benefits from earnings information provided by RAI—and not RAI-Scarsdale—because RAI was Mayer's Employer for the purposes of the Plan.

Mayer additionally argues that Hartford Life erred both by disregarding Mayer's SEP-IRA contributions when calculating Mayer's pre-disability earnings and by concluding that his disability benefits are fully taxable. We do not think the district court erred in finding these determinations to be reasonable and supported by substantial evidence in the record.

First, the district court did not clearly err in concluding that a SEP-IRA is not a salary-reduction agreement under the Plan's terms and therefore should not be included in calculating pre-disability earnings. According to the Plan, the only qualifying contributions are those made pursuant to a salary-reduction agreement, which the Plan defines as "an Internal Revenue Code (IRC) Section 401(k), 403(b) or 457 deferred compensation arrangement," "an executive non qualified deferred compensation arrangement," or "a salary reduction arrangement under an IRC Section 125 plan." App'x 59. This definition does not include a SEP-IRA, which is an Internal Revenue Code Section 408(k) plan. As RAI confirmed to Hartford Life, Mayer's paystubs did not show that Mayer had made "any contributions … through a salary reduction agreement with the Employer to an Internal Revenue Code (IRC) Section 401(k), 403(b) or

457 deferred compensation arrangement; an executive non-qualified deferred compensation arrangement; or a salary reduction arrangement under an IRC Section 125 plan." App'x 236; *see also* App'x 1506-08.

Mayer contends that his SEP-IRA contributions were payments into an executive non-qualified deferred compensation plan. But Mayer's corrected W-2's do not reflect contributions to any "Nonqualified Plans." App'x 937-38. And SEP-IRAs, which are governed by Internal Revenue Code § 408(k), are distinct from non-qualified deferred compensation plans, which are governed by Internal Revenue Code § 409A. The district court did not clearly err in concluding that Hartford Life's determination with respect to the SEP-IRA contributions was supported by substantial evidence.

Second, the district court did not err in concluding that the record contains substantial evidence that RAI paid the Plan's premiums on Mayer's behalf. RAI confirmed that Mayer did not pay these premiums directly, and Mayer does not dispute that fact. Rather, Mayer argues that RAI collected the funds to pay the premium from RAI-Scarsdale. Yet the Plan provides that "[t]he Employer pays the premium for the insurance" and "determines the portion of the cost," if any, "to be paid by the employee," as Hartford Life noted in its final determination on appeal. App'x 69; App'x 234. Because the Employer determines employee eligibility and enrollment and is responsible for keeping documentation related to eligibility and enrollment, Hartford Life reasonably relied on documentation provided by the Employer, which reflected that RAI paid the premiums. Hartford Life further concluded that an arrangement in which RAI-Scarsdale reimbursed the premiums would not affect the benefits determination because "employees do

22

not have the option to pay premiums back to their Employer in order to make a noncontributory benefit a contributory benefit." App'x 237. Thus, such an arrangement "would need to be resolved between the Employer and … Mayer, regarding any type of refund for premium payment." App'x 237. The district court did not err in concluding that Harford Life's determination—that Mayer did not pay his own premiums and therefore his benefits are taxable—was supported by substantial evidence and was neither arbitrary nor capricious.

\* \* \*

In sum, we hold that (1) California Insurance Code § 10110.6(a) applies only to the claims of California residents and (2) ERISA's claims-procedure regulations applicable to Mayer's claim did not require the claims administrator to produce documents developed or considered during the administrative appeal before rendering a final determination. Accordingly, we conclude that the district court correctly reviewed Hartford Life's determination under the arbitrary-and-capricious standard. We also conclude that the district court did not err in holding that Hartford Life's determination was reasonable and supported by substantial evidence in the record. We therefore **AFFIRM** the judgment of the district court.