*McQuillin v. Hartford Life and Accident Insurance Co.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2021

ARGUED: MAY 5, 2022
DECIDED: JUNE 7, 2022

No. 21-1514

JOHN MCQUILLIN,
*Plaintiff-Appellant,*

*v.*

HARTFORD LIFE AND ACCIDENT INSURANCE CO.,
*Defendant-Appellee,*

————

Appeal from the United States District Court
for the Eastern District of New York.

————

Before: WALKER, CALABRESI, and CABRANES, *Circuit Judges.*

————

John McQuillin appeals from the dismissal in the Eastern District of New York (Joanna Seybert, *J.*) of his lawsuit seeking long-term disability benefits under the Employee Retirement Income Security Act of 1974 from Hartford Life and Accident Insurance Company. The suit was dismissed because the district court concluded that McQuillin had failed to exhaust his disability plan's

administrative remedies. McQuillin asserts that his administrative remedies should have been deemed exhausted because Hartford, in violation of the applicable ERISA regulation, failed to provide a final decision on his benefits within 45 days of his administrative appeal. For the reasons that follow, we agree with McQuillin, **REVERSE** the district court, and **REMAND** for further proceedings.

————

JOHN DEHAAN, The DeHaan Law Firm P.C., Hauppauge, NY (Jeffrey Delott, Law Offices of Jeffrey Delott, Jericho, NY, *on the brief*), *for Plaintiff-Appellant John McQuillin*.

PATRICK W. BEGOS (Linda L. Morkan, *on the brief*), Robinson & Cole LLP, Stamford, CT, *for Defendant-Appellee Hartford Life and Accident Insurance Co.*

Jeffrey Hahn, Counsel for Litigation, Stephen Silverman, Senior Trial Attorney, Marcia Bove, Senior Trial Attorney, *on the brief for* G. William Scott, Associate Solicitor for Plan Benefits Security, Seema Nanda, Solicitor of Labor, U.S. Department of Labor, Washington, DC, *for amicus curiae U.S. Secretary of Labor*.

Mark E. Schmidtke, Byrne J. Decker, *on the brief*, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Valparaiso, IN and Portland, ME, *for amicus curiae American Council of Life Insurers*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

John McQuillin appeals from the dismissal in the Eastern District of New York (Joanna Seybert, *J.*) of his lawsuit seeking long-term disability benefits under the Employee Retirement Income

Security Act of 1974 (ERISA) from Hartford Life and Accident Insurance Company (Hartford). The suit was dismissed because the district court concluded that McQuillin had failed to exhaust his disability plan's administrative remedies. McQuillin asserts that his administrative remedies should have been deemed exhausted because Hartford, in violation of the applicable ERISA regulation, failed to provide a final decision on his benefits within 45 days of his administrative appeal. For the reasons that follow, we agree with McQuillin, **REVERSE** the district court, and **REMAND** for further proceedings.

## BACKGROUND

### I.      The Initial Denial

In September 2019, Appellant McQuillin, suffering side effects from prostate cancer treatment, applied for long-term disability benefits. McQuillin's claim was reviewed by Appellee Hartford, which administered the disability plan for his prior employer, Wright Medical Technology.

Hartford denied McQuillin's claim in a letter dated October 25, 2019, "based on the fact that [Hartford] didn't have enough proof of loss to evaluate [his] disability" and that it was missing certain medical records "necessary to make a decision on [McQuillin's] claim."[1] The letter stated that McQuillin could appeal the decision and correctly informed him that ERISA required Hartford to provide a "final decision" within 45 days of the appeal, a period that Hartford could extend with prior written notice.[2] The letter also informed him that if he disagreed with the decision on administrative appeal, he

---

[1] App. 209.

[2] *Id.* at 210.

could file a lawsuit. In response, McQuillin filed the administrative appeal with additional evidence on April 11, 2020.

**II.     The Appeal**

The administrative appeal was governed by 29 C.F.R. § 2560.503-1, which was promulgated by the Department of Labor pursuant to ERISA, and which "sets forth minimum requirements" for the review of disability claims.[3] Among other things, disability plans must give claimants "a reasonable opportunity to appeal an adverse benefit determination."[4] The review must take "into account all . . . information submitted by the claimant . . ., without regard to whether such information was . . . considered in the initial benefit determination."[5] The administrator must also provide the claimant with "any new . . . evidence" or "rationale" it is considering as the basis for denying benefits.[6] The plan administrator must inform the claimant of its "benefit determination on review" within 45 days, unless "special circumstances" require a 45-day extension.[7] If an extension is needed because the claimant has not provided necessary information, then the period for making the benefit determination will be tolled until the claimant does so.[8]

On April 23, 2020, twelve days after McQuillin filed his appeal, Hartford responded with a letter saying that it had "completed [its]

---

[3] 29 C.F.R. § 2560.503-1(a).

[4] *Id.* § 2560.503-1(h)(1). An "adverse benefit determination" is defined as "[a] denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit." *Id.* § 2560.503-1 (m)(4).

[5] *Id.* § 2560.503-1(h)(2)(iv).

[6] *Id.* § 2560.503-1(h)(4)(i)-(ii).

[7] *Id.* § 2560.503-1(i)(1)(i), (3)(i).

[8] *See id.* § 2560.503-1(i)(4).

review of the appeal" and the additional evidence, that it had "overturned the original decision to deny [the claim]," and that it had "forwarded [the claim] to the claim department . . . to determine if [d]isability is supported."[9] The letter cautioned, however, that payment was not guaranteed. The claims department would review the information, determine if McQuillin was disabled, and render a new decision.

### III. The Lawsuit

On May 27, 2020, 46 days after filing his appeal, McQuillin sued Hartford in the Eastern District of New York. In July, with the federal litigation underway, Hartford again denied McQuillin's benefits claim, this time finding that he did not qualify as disabled. This denial letter contained essentially the same appeal information as the initial denial letter.

In May 2021, the district court accepted a magistrate judge's recommendation to dismiss McQuillin's suit on the basis that he had failed to exhaust his plan remedies because his claim was still under review by Hartford when he filed suit. McQuillin timely appealed, and the Secretary of Labor and the American Council of Life Insurers filed opposing *amicus* briefs in support of McQuillin and Hartford, respectively.

### DISCUSSION

On appeal, McQuillin argues that the district court improperly dismissed his complaint. We review a district court's dismissal of ERISA claims for failure to exhaust plan remedies *de novo*.[10]

---

[9] App. 214.

[10] *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006).

Under ERISA, a claimant may sue in federal court for benefits due to him under his disability plan.[11] But first a claimant must exhaust his plan's internal remedies.[12] A plan's remedies are deemed exhausted if the plan administrator does not "strictly adhere" to § 503-1's requirements.[13] McQuillin asserts that, because Hartford did not provide a "benefit determination on review" within the 45-day window required by § 503-1(i)(3)(i), his administrative remedies should be deemed exhausted. Although Hartford's April 23 letter "overturned" the original decision and "forwarded" his claim to the claims department for further consideration,[14] McQuillin maintains that the letter failed to render a "benefit determination." Thus, because Hartford did not strictly adhere to the rule's requirements, McQuillin's remedies were deemed exhausted such that he was free to bring suit in district court. Hartford responds that its April letter was a timely benefit determination on review because such a determination need only resolve the issue appealed, not the entire benefits claim.

The dispositive question in this appeal is whether a valid benefit determination on review must determine whether a claimant

---

[11] *See* 29 U.S.C. § 1132.

[12] *See Halo v. Yale Health Plan*, 819 F.3d 42, 55 (2d Cir. 2016).

[13] 29 C.F.R. § 2560.503-1(*l*)(2)(i) ("In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan . . . . Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.").

[14] App. 214.

is entitled to benefits.[15]   Based on the regulation's plain language, structure, and purpose, we hold that it must.[16]  We further hold that, because Hartford did not extend the benefit determination period, McQuillin's duty to exhaust had ceased by the 46th day, the day he filed his federal case.   Thus, the district court erred in dismissing McQuillin's suit.

Resolving the issue in dispute requires careful interpretation of the regulation.[17]   In performing this analysis, we consider the "text, structure, history, and purpose of [the] regulation."[18]  We turn first to the regulation's text.

## I.      Section 503-1's Text

The text plainly supports McQuillin's reading of the regulation. Section 503-1 states that "[t]he plan administrator shall provide a

---

[15] McQuillin raises other arguments in his brief that we need not address.

[16] Our interpretation of the regulation largely accords with that advanced by the Secretary of Labor's *amicus* brief.  *See generally* Sec'y Br. 14-28.  Because the regulation is not ambiguous, however, we do not defer to the Secretary under *Auer v. Robbins*, 519 U.S. 452 (1997).  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (cautioning that courts should exercise *Auer* deference only when regulations are "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation").

[17] The parties have not cited any caselaw on point, and we have found none.   Hartford cites a district court decision, which we affirmed, upholding a claim denial after an appeal was remanded to the defendant's claim department.  *Mayer v. Ringler Assocs. Inc. & Affiliates Long Term Disability Plan*, No. 18 CV 2789 (VB), 2020 WL 1467374 (S.D.N.Y. Mar. 26, 2020), *aff'd* 9 F.4th 78 (2d Cir. 2021).  But, as Hartford concedes, the parties in that case did not dispute the validity of the remand, and the reviewing courts did not express a view on the issue.

[18] *Kisor*, 139 S. Ct. at 2415.

claimant with . . . notification of a plan's benefit determination on review" within 45 days.[19]  The regulation does not separately define "benefit determination," but its meaning is clear.  A plan must provide an appealing claimant not just with a "determination," or an "appeal determination," but with a *benefit* determination."[20]  It is the claimant's benefits that the administrator has 45 days to decide, not only the appeal or some other aspect of the claim.

The use of the word "determination" further underscores that the administrator must comprehensively resolve the claim. *Merriam-Webster's Collegiate Dictionary* first defines the word as "a judicial decision settling and ending a controversy."[21]  Similarly, *Black's Law Dictionary* first defines the word as "[t]he act of deciding something officially; esp., a final decision by a court or administrative agency."[22]  Of course, these two definitions are not exhaustive.  As Hartford points out, the *Collegiate Dictionary*'s second entry is "the resolving of a question by argument or reasoning."[23]  Still, "determination" unmistakably suggests finality.  The word choice thus reinforces the regulation's natural reading that the review must determine the claimant's benefits, finally resolving the claim.

Hartford's own usage supports this reading.  In its letters to McQuillin describing the appeal process, Hartford stated that ERISA required it "to make a *final decision* no more than 45 days after" receipt

---

[19] 29 C.F.R. § 2560.503-1(i), (j).

[20] *Id.* § 2560.503-1(i)(1)(i) (emphasis added).

[21] *Determination*, Merriam-Webster's Collegiate Dictionary (11th ed. 2007).

[22] *Determination*, Black's Law Dictionary (11th ed. 2019).

[23] *Determination*, Merriam-Webster's Collegiate Dictionary (11th ed. 2007).

of the appeal.[24]   Thus, when addressing a lay plan participant, Hartford substituted "benefit determination on review" with "final decision," implicitly acknowledging that the determination had to be a final denial or grant of benefits.

Hartford argues that "determination" does not imply finality because § 503-1 uses the phrase "adverse benefit determination" to "refer to decisions that require further administrative review."[25]   But while the regulation does refer to adverse determinations on both initial and appellate review, the former do not "require" administrative review if the claimant chooses not to appeal.

Hartford's strongest textual argument is what the regulation does not say.  The regulation expressly defines an "adverse benefit determination" and provides detailed instructions on the form and content of the notice required for such an "adverse" decision, but the regulation does not describe notice requirements for other, non-adverse outcomes.[26]  Given that the regulation "sets forth minimum requirements,"[27] Hartford argues that it had the flexibility to issue a benefit determination on review that did not determine whether McQuillin was entitled to benefits but instead remanded the question for further internal consideration.  This argument, however, reads the word "benefit" out of the phrase "benefit determination on review." An outcome that does not determine benefits cannot be a "benefit determination."   The term is not ambiguous simply because the regulation defines other terms in more detail.

---

[24] App. 102, 210 (emphasis added).

[25] Appellee Br. 31.

[26] *See* 29 C.F.R. § 2560.503-1(j), (m)(4).

[27] *Id*. § 2560.503-1(a).

Whatever Hartford's April 23rd letter did, it plainly did not "determine" McQuillin's "benefits." The letter itself made that clear, warning McQuillin that "the decision to reverse the prior [decision] due to proof of loss does not guarantee payment of benefits."[28] The text of the regulation thus supports McQuillin's argument that he did not receive a timely benefit determination on review.

**II.     Section 503-1's Structure**

Section 503-1's structure supports its plain meaning. The regulation's appeal process is clearly intended to result in a final determination of benefits. The administrator handling the appeal must "take[] into account" any evidence "relating to the claim" whether or not it "was submitted or considered in the initial benefit determination."[29] The administrator may rely on new evidence or rationales to deny the claim so long as the claimant is given notice and an opportunity to respond.[30] In evaluating the available evidence and reasoning, the administrator cannot "afford deference" to the initial claim decision.[31] This scope and method of review is consistent with an appeals process that determines benefits conclusively, not one that narrowly corrects certain errors and then remands for further consideration.

This appellate review is bound by strict time limits. The administrator must reach a determination within 45 days, or 90 days following an extension for "special circumstances."[32] This latter limit,

---

[28] App. 214.

[29] 29 C.F.R. § 2560.503-1(h)(2)(iv).

[30] *Id.* § 2560.503-1(h)(4)(i)-(ii).

[31] *Id.* § 2560.503-1(h)(3)(ii).

[32] *Id.* § 2560.503-1(i)(1)(i), (3)(i).

meanwhile, can be tolled only if the claimant has not submitted the "information necessary to decide [the] claim."[33] Thus, § 503-1 protects the administrator from the claimant's delays (provided the administrator has already sought an extension) but otherwise firmly limits the appeal's duration, ensuring the timely resolution of claims. If a remand qualified as a benefit determination on review, as Hartford suggests, plans could render the 45-day limit meaningless. Whenever pressed for time, or seeking to delay, administrators could simply remand the case to their claims departments to consider or reconsider evidence or issues. In theory, Hartford's reading of the regulation would allow for multiple remands, delaying resolution indefinitely.[34]

In response, Hartford emphasizes that the regulation requires disability plans to "strictly adhere" to its provisions.[35] Strict adherence, Hartford argues, implies explicit requirements.[36] Thus, it cannot be expected to anticipate further unspecified requirements in the regulation.

But, as we have discussed, § 503-1 explicitly required Hartford to provide a *benefit* determination. And the text is reinforced by the rule's structure, which assumes a final decision on appeal. That Hartford acted in a way not anticipated by the regulation does not

---

[33] *Id.* § 2560.503-1(i)(4).

[34] *Cf. Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 636 (10th Cir. 2003) ("It would be manifestly unfair to claimants if plan administrators could extend the process indefinitely by continually requesting additional information.").

[35] 29 C.F.R. § 2560.503-1(*l*)(2)(i).

[36] *See Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982) ("The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit.").

excuse its failure to comply with the rule's requirements. As with the text, the regulation's structure supports McQuillin's reading.

### III. Section 503-1's History and Purpose

Finally, we briefly consider the regulation's history and purpose. ERISA serves dual purposes: "'ensuring fair and prompt enforcement of rights under a plan and the encouragement and creation of such plans.'"[37] The law represents "a careful balancing" between these two interests.[38] In balancing them, the Department of Labor has made clear that § 503-1 is intended to prevent plans from "impos[ing] an unlimited number of levels of administrative appeals of denied claims."[39] We therefore cannot adopt Hartford's interpretation of the rule, which frustrates that purpose.

Hartford argues that its view is in keeping with the regulation's purpose because it gives administrators flexibility in managing their plans. The Department of Labor is cognizant that administrators need flexibility in administering plans. The Department noted in an FAQ that the regulation is "intended to preserve the greatest flexibility possible for designing and operating claims processing systems consistent with the prudent administration of a plan."[40] But this

---

[37] *Halo*, 819 F.3d at 55 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424 (2014)); *see id.* at 52 (noting that in regulatory interpretation, we consider both the regulation's purpose and that of the authorizing statute).

[38] *Id.* at 55 (quotation marks omitted).

[39] *See* Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure, 65 Fed. Reg. 70,246, 70,253 (Nov. 21, 2000) (preamble).

[40] Dep't of Labor, *Benefit Claims Procedure Regulation FAQs*, at B-4, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation.

general interpretive gloss does not outweigh the regulation's stated purpose, reinforced by its text and structure, of limiting the number of appeals a claimant must pursue.

Section 503-1's text, structure, history, and purpose are fully consistent. A "benefit determination on review" must finally decide the claimant's benefits within 45 days, assuming the absence of special circumstances that require an extension. By the 46th day after his appeal, Hartford had not determined McQuillin's benefits nor extended its review time. So, McQuillin was deemed to have exhausted his plan remedies and could bring suit in federal court. Thus, the district court erred in dismissing his suit.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** the case for proceedings consistent with this opinion.